J-S54030-18

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| IN RE: ADOPTION OF E.G.B. | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| APPEAL OF: S.A.B. | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 622 WDA 2018 |

Appeal from the Order Entered March 23, 2018
In the Court of Common Pleas of Westmoreland County Orphans' Court
at No(s):  No. 094 of 2017

BEFORE:  PANELLA, J., LAZARUS, J., and MURRAY, J.

MEMORANDUM BY LAZARUS, J.:                    **FILED SEPTEMBER 07, 2018**

S.A.B. (Father) appeals from the trial court's order involuntarily terminating his parental rights to his daughter, E.G.B. (Child) (born 2/2010). After review, we affirm.

Father was incarcerated in 2014 after pleading guilty to involuntary deviate sexual intercourse (IDSI), aggravated indecent assault of a child, and endangering the welfare of a child (EWC).  Father's other natural daughter was the victim of Father's sexual abuse.  Father is a registered lifetime sexual offender under Pennsylvania's Sex Offender Registration and Notification Act (SORNA) and has been classified as a Sexually Violent Predator.[1]  Father was

---

[1] SORNA, 42 Pa.C.S.A. §§ 9799.10-9799.42, establishes a statewide registry of sexual offenders.  **See** 42 Pa.C.S.A. § 9799.16(a).  On December 20, 2012, SORNA replaced the sexual offender registration statutory provisions, which were known as Megan's Law III, 42 Pa.C.S.A. §§ 9791-9799.9 (expired).

sentenced to serve a term of 4-12 years' incarceration; he is due to be paroled in August 2018.

In August 2017, J.L.B. (Mother) and her fiancée, J.C., a prospective adoptive parent,[2] filed a petition to involuntarily terminate Father's parental rights. On March 22, 2018, the court held a termination hearing where Mother, Father, and J.C. testified. The court interviewed Child[3] *in camera*. Following the hearing, the court entered an order terminating Father's parental rights under sections 2511(a)(1), (10), (11) and (b) of the Adoption Act.[4]

Father filed a timely court-ordered Pa.R.A.P. 1925(b) concise statement of matters complained of on appeal and notice of appeal. He raises the following issue for our review: Whether the trial court erred in finding by clear and convincing evidence that [Petitioner] met her burden under 23 Pa.C.S. § 2511(b)?[5]

---

[2] Mother and J.C. are scheduled to be married in August 2018.

[3] Both a guardian *ad litem* as well an attorney represented Child at the termination proceedings. ***See In re Adoption of L.B.M.***, 161 A.3d 172 (Pa. 2017) (counsel required to be appointed in contested involuntary termination proceedings to represent Child's legal interests if they differ from best interests); ***see also*** 23 Pa.C.S. § 2313(a) (mandating appointment of counsel in contested involuntary termination proceedings).

[4] 23 Pa.C.S. §§ 2101-2910.

[5] Father does not contest the court's order terminating his parental rights under section 2511(a). Thus, we have confined our review to the propriety of the termination order as it relates to section 2511(b).

The thrust of Father's argument on appeal is that the status of his bond with Child was not adequately examined under section 2511(b), and, thus, due to the lack of substantive testimony on the issue, termination was not proper. We disagree.

Under 23 Pa.C.S. § 2511, the court must engage in a bifurcated process prior to terminating parental rights. Initially, the focus is on the conduct of the parent. The party seeking termination must prove by clear and convincing evidence that the parent's conduct satisfies the statutory grounds for termination delineated in section 2511(a). Only after determining that the parent's conduct warrants termination of his or her parental rights must the court engage in the second part of the analysis: determination of the needs and welfare of the child under the standard of best interests of the child. **See** 23 Pa.C.S. § 2511(b). One major aspect of the needs and welfare analysis concerns the nature and status of the emotional bond between parent and child.

In **In re Adoption of C.L.G.**, 956 A.2d 999 (Pa. Super. 2008), our Court noted:

> Incarceration alone is not sufficient to support termination of parental rights under any subsection. A parent desiring to retain parental rights must exert himself to take and maintain a place of importance in his child's life. A parent's responsibilities are not tolled during incarceration, and therefore the court must inquire whether the parent utilized those resources available while he or she was in prison to continue a close relationship with the child.
>
> [Moreover, i]n cases involving an incarcerated parent, this Court has emphasized that a "parent's basic constitutional right to the custody and rearing of his child is converted, upon the failure to

fulfill parental duties, to the child's right to have proper parenting and fulfillment of his or her potential in a permanent, healthy, safe environment." *In re N.M.B.*, [] 856 A.2d 847, 856 (Pa. Super. 2004)[.] "[T]he parent wishing to reestablish his parental responsibilities bears the burden of proof relative to post-abandonment contact." *See In re K.Z.S.*, [] 946 A.2d 753, 759 (Pa. Super. 2008).

*Id.* at 1006.

Instantly, Child was 3½ years old when Father was incarcerated. At no point in time since then has Child been in Father's custody and care. At the time of the termination hearing, Child had not spoken to Father in 2½ years and she had not seen Father in over 3½ years. The only contact that Father had with Child while he was incarcerated was in the form of ten phone calls and twelve letters.

With regard to section 2511(b), our Court has also stated that:

Intangibles such as love, comfort, security, and stability are involved when inquiring about the needs and welfare of the child. The court must also discern the nature and status of the parent-child bond, paying close attention to the effect on the child of permanently severing the bond. *In re C.P.*, [] 901 A.2d 516 (Pa. Super. 2006).

*In re Adoption of C.L.G.*, 956 A.2d at 1010.

Father complains that the court did not order a bonding assessment as part of the process of determining whether termination was proper under section 2511(b). However, section 2511(b) does not require a formal bonding evaluation. *In re Z.P.*, 994 A.2d 1108, 1121 (Pa. Super. 2010). Rather, "the court must take into account whether a bond exists between child and parent, and whether termination would destroy an existing, necessary, and beneficial

relationship." ***Id.*** Moreover, in addition to a bonding examination, the court can equally emphasize the **safety** needs of the child under subsection (b), particularly in cases involving physical or sexual abuse, severe child neglect or abandonment, or children with special needs. ***In re K.Z.S.***, 946 A.2d 753, 763 (Pa. Super. 2008).

Instantly, at an *in camera* interview, Child told the trial judge that she thinks Father is "really bad," that she would not recognize Father if she saw him, and that she does not want to see him. N.T. Termination Hearing/*In Camera* Interview, 3/22/18, at 158. Child's feelings are legitimized where Child knew her sibling suffered sexual abuse at the hands of Father. Father also testified that he does not have a bond with Child. ***Id.*** at 133. J.C. testified that he loves Child like a daughter and that if Father's parental rights were terminated, he intends to adopt Child. ***Id.*** at 95.

We find that termination was proper under section 2511(b) due to the lack of any bond between Father, the safety needs of Child due to Father's sexual abuse history, and the fact that Mother's soon-to-be husband is a prospective adoptive resource. Under such circumstances, termination would best serve Child's needs and welfare where she would find the stability necessary for "the fulfillment of her potential in a permanent, healthy and safe environment." ***In Interest of Lilley***, 719 A.2d 327, 335 (Pa. Super. 1998). "[A] child's life simply cannot be put on hold in the hope that [a parent] will summon the ability to handle the responsibilities of parenting." ***In re Z.P.***, 994 A.2d 1108, 1125 (Pa. Super. 2010).

Order affirmed.


Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date:  9/7/2018